**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**MARLON JONES,**

       **Petitioner,**

  **v.**　　　　　　　　　　　　　　　　　　　　**9:04-CV-0400**
　　　　　　　　　　　　　　　　　　　　　　　　**(NAM)**

**GARY GREENE, Superintendent, Great Meadow**
**Correctional Facility,**

       **Respondent.**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**　　　　　　　　　　　　**OF COUNSEL:**

**FOR THE PETITIONER:**

**MARLON JONES**
Petitioner, *pro se*
No. 00-A-6511
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

**FOR THE RESPONDENT:**

**HON. ANDREW CUOMO**　　　　　　**GERALD J. ROCK, Esq.**
Office of the Attorney General　　　　　Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

**NORMAN A. MORDUE**
**CHIEF, UNITED STATES DISTRICT JUDGE**

**MEMORANDUM-DECISION AND ORDER**

I.　　**Background**

    A.　　**State Court Proceedings**

      The state court records reflect that on December 9, 1999, Dan Murtha was a student at the

State University of New York at Albany who lived in the Steinmetz Hall dormitory. *See*

Transcript of Trial of Marlon E. Jones (9/5/00) ("Trial Tr.") at pp. 156-57. At about 2:00 a.m. on

December 9th, Murtha heard a knock on the door to his dorm room.  Trial Tr. at p. 158.  An acquaintance of Murtha, Greg Able, answered the door, Trial Tr. at p. 158, and a large hispanic male and a black male, later identified by Murtha as petitioner, *pro se* Marlon Jones, entered the room.  Trial Tr. at pp. 159-60, 176.  Once inside, the men began demanding money and drugs from the occupants.  Trial Tr. at p. 163.  When the hispanic male pushed Murtha, the two become embroiled in a fight which ended when Jones brandished a 9mm handgun.  Trial Tr. at pp. 163-64.  After it became apparent that there were no drugs in the room, Jones placed the gun against Murtha's neck and directed him to call someone and have marijuana brought to the dorm room.  Trial Tr. at pp. 165-66.  Murtha placed the call, during which he surreptitiously advised the friend whom he had called that Murtha was in trouble.  Trial Tr. at pp. 167-68.  Shortly thereafter, as Jones was standing in the room, Murtha noticed that Jones had pointed the gun he was holding toward the ground, which action prompted Murtha to lunge at Jones in an effort to wrest the gun away from him.  Trial Tr. at pp. 169-71.  During that struggle, the bandana that had been obscuring Jones's face since he entered the room came down, exposing his face.  Trial Tr. at pp. 173-74.[1]  The hispanic male then hit Murtha, which enabled Jones to recover the gun.  Trial Tr. at pp. 175-76.  At about that time, someone knocked on Murtha's door.  Trial Tr. at pp. 176-77.  The hispanic male opened the door, revealing the presence of approximately one dozen people in the hallway. Trial Tr. at pp. 177-78.  Upon seeing those individuals, Jones and his accomplice left the room, and fled the scene by a nearby staircase.  Trial Tr. at p. 178.

Later that same day, at about 4:00 p.m., Murtha and another roommate entered the

---

[1]     At the time the bandana fell from Jones' face, the room was fully lit.  Trial Tr at pp. 174-75.

university's cafeteria and Murtha noticed that one of the individuals working in the cafeteria resembled the black male who had robbed him at gun point earlier that morning. Trial Tr. at p. 180. Jones noticed Murtha and eventually called him over to the food service counter. Trial Tr. at pp. 180-81. As Murtha approached Jones, they had a conversation regarding the events that had transpired earlier that day, which ended when Jones informed Murtha that he "shouldn't have been a hero." Trial Tr. at p. 181. Soon thereafter, Murtha left the area and reported the incident to security personnel at the university. Trial Tr. at p. 182. Murtha thereafter spoke with Investigator Wendy Knoebel of the State University of New York ("SUNY") at Albany's police division, and informed her what had transpired that evening. Trial Tr. at pp. 182-83.

During the course of her investigation into the crimes, Investigator Knoebel created a photographic array of potential suspects to be viewed by Murtha in order to ascertain whether he could identify the perpetrator of the crime. *See* Transcript of Suppression Hearing (5/31/2000) ("Suppression Tr.") at pp. 17, 36-37. The initial photo array shown to Murtha did not contain a picture of Jones, and Murtha did not identify any of the individuals in the array as a perpetrator. *See* Suppression Tr at pp. 37-38. Approximately five hours later, Investigator Knoebel replaced one of the photographs in the array with a picture of Jones – whom she then believed might be a suspect in crimes – and left the remaining photographs undisturbed. When the investigator showed this "second" array to Murtha, he positively identified Jones as the individual who had previously entered Murtha's room in the early morning hours of December 9, 1999. *See* Suppression Tr at pp. 38-39, 41. Subsequent to that identification, Investigator Knoebel applied

for and was granted an arrest warrant relating to Jones.[2]

On December 12, 1999, Investigator Knoebel arrested Jones.  Trial Tr. at pp. 226-28.  At the time of his arrest, Jones was carrying a purple book bag.  Trial Tr. at p. 227.  Investigator Knoebel searched that bag at that time and discovered, *inter alia*, a 9mm handgun, 59 packets of crack cocaine, a red bandana, and a black hood.  Trial Tr. at p. 229.  Jones was then transported to the SUNY police station where he was advised of his *Miranda* rights.[3]  Trial Tr. at p. 242.  After he acknowledged those rights and agreed to speak to law enforcement agents without an attorney being present, Jones spoke with the police and eventually provided them with a written statement in which he admitted that he had been in possession of the handgun at the time of his arrest, Trial Tr. at p. 246, however he did not implicate himself in the crime that occurred at Murtha's dormitory room.  Trial Tr. at pp. 246-47.[4]

As a result of the foregoing, on January 28, 2000, an Albany County grand jury returned a five count indictment against Jones.  *See* Indictment (reproduced in Appellant's Appendix on Appeal ("App.") at pp. A2- 6).  In that accusatory instrument, Jones was charged with: first degree robbery (Count One); robbery in the second degree (Count Two); criminal possession of a weapon in the second degree (Count Three); third degree criminal possession of a controlled substance (Count Four); and criminal possession of a controlled substance in the fourth degree (Count Five).  *See* Indictment.

---

[2]     After obtaining the arrest warrant, Murtha's roommate, Abel, also identified Jones from the same photo array that had been shown to Murtha.  *See* Suppression Tr. at p. 45.

[3]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4]     Jones did, however, ask Investigator Knoebel at the time:  "what kind of deal are you giving me?"  Trial Tr. at p. 247.

A pretrial suppression hearing was held before County Court Judge Thomas A. Breslin on May 31, 2000.  At the conclusion of that proceeding, Judge Breslin denied Jones' motion to preclude Murtha from making an in-court identification of Jones, and also denied Jones' motion to suppress the items seized from Jones at the time of his arrest.  *See* App. at pp. A38-42.  Judge Breslin also denied Jones' motion for severance of the robbery charges from the weapon and drug possession charges.  *See* App. at p. A58.

Beginning on September 5, 2000, a jury trial was held regarding the foregoing charges in Albany County Court with Judge Breslin presiding.  *See* Trial Tr.  At the conclusion of that proceeding, the jury acquitted Jones of both robbery charges, but convicted him of criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03(2); criminal possession of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16(1); and criminal possession of a controlled substance in the fourth degree, in violation of N.Y. Penal Law §  220.09(1).  *See* Trial Tr. at pp. 477-80.

On November 17, 2000, Jones appeared before Albany County Court Judge Dan Lamont for sentencing on the above convictions.  At that proceeding, the court initially considered Jones' motion to set aside the verdict which he filed pursuant to Section 330.30(1) of New York's Criminal Procedure Law ("CPL").  *See* Transcript of Sentencing (11/17/00) ("Sentencing Tr.") at p. 5.  After denying that application, *id.* at p. 6, and finding that Jones was a second felony offender, *id.* at pp. 6-7, Judge Breslin sentenced Jones to a determinate term of fourteen years imprisonment on the weapons possession conviction, and indeterminate terms of five to ten years imprisonment on each of the two drug convictions, with those sentences to be served concurrent to each other but consecutive to the term of imprisonment imposed on Jones relating to the weapons

possession conviction.  *See* Sentencing Tr. at pp. 13-15.  Judge Breslin further ordered that those sentences were to be served consecutive to any undischarged term of imprisonment that Jones was still required to serve that related to his prior criminal conviction.  Sentencing Tr. at pp. 15-16.

Petitioner appealed the foregoing to the New York State Supreme Court Appellate Division, Third Department.  On January 2, 2003, that court unanimously affirmed Jones' convictions and sentences.  *See People v. Jones*, 301 AD.2d 678 (3d Dep't 2003).  Jones' application for leave to appeal that decision to the New York Court of Appeals was denied by that court on February 27, 2003.  *People v. Jones*, 99 N.Y.2d 616 (2003).

The records also reflect that in May, 2001, while his appeal was pending, Jones filed a motion to vacate his judgment of conviction pursuant to CPL § 440.10 ("May, 2001 CPL Motion").  That application was opposed by the Albany County district attorney, and in a Decision/Order dated July 9, 2001, Judge Lamont denied that application.

On August 31, 2005, Jones filed an application seeking a writ of error *coram nobis* in which he alleged that he received the ineffective assistance of appellate counsel.  That application was denied by the Appellate Division in a decision dated November 15, 2005, and New York's Court of Appeals denied Jones' application for leave to appeal that decision in its order filed February 6, 2006.  *See People v. Jones*, 6 N.Y.3d 814 (2006).[5]

**B.    This Action**

On April 9, 2004, Jones filed a *pro se* petition in this District seeking a writ of habeas

---

[5]    Although this Court was not provided with a copy of the Appellate Division's decision relating to Jones' *coram nobis* application, the Court of Appeals, in its decision denying Jones' application for leave to appeal, noted that the Third Department denied Jones's *coram nobis* request on November 15, 2005.  *See Jones*, 6 N.Y.3d at 814.

corpus pursuant to 28 U.S.C. § 2254.  *See* Dkt. No. 1.  By order filed May 12, 2004, this Court

directed Jones to file an amended pleading if he wished to proceed with this action, *see* Dkt. No. 2,

and on May 28, 2004, Jones filed that amended petition.  *See* Dkt. No. 3.[6]  This Court reviewed

Jones' amended petition and thereafter directed the respondent to file his response to that

submission.  *See* Dkt. No. 5.

On November 9, 2004, the Office of the Attorney General for the State of New York,

acting on respondent's behalf, filed a response in opposition to Jones' amended petition.  *See* Dkt.

No. 10.

On February 4, 2005, Jones filed a motion that requested that this Court stay this matter

while he pursued his *coram nobis* application in the state courts.  Dkt. No. 14.  This Court granted

that request on July 14, 2005, Dkt. No. 17, and, after that challenge was denied by the Appellate

Division, Jones requested that the stay herein be lifted and that he be permitted to file a second

amended petition in this action.  *See* Dkt. No. 24.  On October 30, 2006, Magistrate Judge David

R. Homer granted Jones' application to lift the stay and also granted Jones' motion to amend.  *See*

Dkt. No. 33.  On October 30, 2006, Jones filed a second amended pleading in this action.  *See* Dkt.

No. 34 ("Am. Pet.").

In his amended petition, Jones argues that:  i) his trial counsel rendered ineffective

assistance when he failed to obtain a ruling on Jones' application which argued that the arrest

warrant was obtained as a result of an unduly suggestive photo array utilized by law enforcement

agents; ii) appellate counsel was ineffective because he failed to argue that Jones' trial counsel

---

[6]        Jones also filed a supporting memorandum of law relating to that amended
pleading.  *See* Dkt. No. 4.

-7-

rendered ineffective assistance; and iii) the County Court improperly imposed consecutive sentences on Jones.  *See* Am. Pet., Grounds One through Three.  In the supporting memorandum of law he filed in support of that amended pleading, in addition to reasserting these three claims, Jones also claims, in the portion of that memorandum which he has labeled as "Ground One," that he was denied the opportunity to adequately litigate his Fourth Amendment claim in the state courts below.  *See* Dkt. No. 41 ("Supporting Mem.") at pp. 17-19.[7]

On November 15, 2006, respondent filed a memorandum of law in opposition to Jones' amended pleading in which he argues that Jones' request for federal habeas intervention must be denied.  *See* Dkt. No. 35 ("Resp. Mem.").  Petitioner thereafter submitted a "traverse" in further support of his amended habeas application.  *See* Dkt. No. 38.

## II.  <u>Discussion</u>

### A.  <u>Standard of Review</u>

The April, 1996 enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an

---

[7]      In his supporting memorandum, Jones numbered the pages relating to his statement of facts as page numbers one through fourteen, and then numbered the pages in support of his legal argument as page numbers one through fifteen. *See* Supporting Mem.  When that brief was docketed by the Clerk of the Court, it was automatically assigned sequential numbers.  For sake of clarity and consistency, this Court's reference to the page numbers contained in Jones' supporting memorandum will refer to the sequential numbers generated by the Clerk when that brief was filed herein.

> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States"; or (2) was
> "based on an unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding."

*Id.* at 73 (quoting 28 U.S.C. § 2254(d));[8] *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001). In providing guidance concerning application of this test, the Second Circuit has recently noted that:

> [A] state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of a
> legal rule, or addresses a set of facts "materially indistinguishable"
> from a Supreme Court decision but nevertheless comes to a different
> conclusion than the Court did. [*Taylor*, 529 U.S.] at 405-06;
> *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001).... [A] state
> court's decision is an "unreasonable application of" clearly
> established federal law if the state court "identifies the correct
> governing legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts" of the case before it.
> *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). Objectively unreasonable in this context has been interpreted as meaning that "'some increment of incorrectness beyond error is required'" for the

---

[8] It should be noted that "clearly established federal law" in this context "refers only to the holdings of the Supreme Court." *Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

habeas court to properly grant the application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006)

(quoting *Francis S.*, 221 F.3d at 111).

      **B.**    **Review of Jones' Amended Petition**

           **i.**      **Fourth Amendment Claims**[9]

     This Court initially considers Jones' Fourth Amendment claims which argue that he was

subjected to a wrongful arrest and that the evidence obtained in conjunction with that arrest should

have been suppressed.[10] *See* Supporting Mem. at pp. 17-19.

     In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court determined that "where the

State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in

an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494 (footnote

omitted); *see also Wallace v. Kato*, ___ U.S. ___, 127 S.Ct. 1091, 1099 n.5 (2007); *Capellan v.

Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Stone*); *Morales v. Walsh*, No. 02-CV-6045, 2003

WL 23185770, at *15 (E.D.N.Y. Oct. 30, 2003) ("*Stone v. Powell* applies to all Fourth

Amendment claims – including claims of arrest without probable cause – and regardless of the

---

      [9]     The Second Circuit has instructed federal district courts to construe *pro se*
submissions liberally and to interpret them "to raise the strongest arguments that they suggest."
*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks
and citation omitted); *see also Bido v. Miller*, No. 00 CV 8462, 2005 WL 1241898, at *1
(S.D.N.Y. May 24, 2005). Mindful of this directive, this Court has construed this action as one
which asserts four grounds for relief – the three grounds raised in his amended pleading as well
as the additional argument he asserts in his supporting memorandum of law.

      [10]     A claim that the police lacked probable cause to arrest an individual is one rooted
in the Fourth Amendment to the United States Constitution. *See Rodriguez v. Zon*, No.
01-CV-2036, 2004 WL 1752418, at *7 (E.D.N.Y. Aug. 5, 2004); *McPherson v. Greiner*, No. 02
CIV.2726, 2003 WL 22405449, at *16 (S.D.N.Y. Oct. 22, 2003).

nature of the evidence that the defendant is seeking to suppress").

The Second Circuit has noted that federal review of Fourth Amendment claims in federal habeas petitions may only be undertaken in one of two instances:  a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.  *Capellan*, 975 F.2d at 70 (citation omitted); *James v. Marshall*, No. CV-05-1992, 2007 WL 3232513, at *9 (E.D.N.Y. Oct. 31, 2007) (citing *Capellan*); *Hickey v. Conway*, No. 03-CV-350, 2005 WL 1660115, at *4 (N.D.N.Y. July 6, 2005) (Scullin, C.J.) (citing *Capellan*).[11]

Jones argues that an unconscionable breakdown occurred because the procedures utilized by law enforcement agents in creating the photo array, and thereafter displaying that array to Murtha, were unduly suggestive and violated Jones' Fourth Amendment rights.  Supporting Mem. at pp. 17-18.  Specifically, Jones argues that the fruit of the "poisoned" identification procedure – his arrest – should have been declared illegal by the County Court, and that the trial court's failure to grant the suppression motion and find the arrest of Jones to be unlawful ran afoul of the United States Constitution.  Supporting Mem. at pp. 18-19.

In explaining what a petitioner must prove to demonstrate that an "unconscionable breakdown" occurred in the context of a Fourth Amendment claim that would permit a federal district court to consider such a ground for relief, the court in *Brazeau v. Zon*, No. 04-CV-031,

_____

[11]     New York State has provided an opportunity for defendants to fully and fairly litigate Fourth Amendment claims.  *See* CPL § 710; *Capellan*, 975 F.2d at 70 n.1; *Jackson v. Lacy*, 74 F.Supp.2d 173, 176 (N.D.N.Y. 1999) (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge Ralph W. Smith, Jr.).

2007 WL 2903617 (W.D.N.Y. Oct. 1, 2007) recently observed:

> [T]he Second Circuit has not defined precisely when an
> unconscionable breakdown has occurred....   [T]he district court
> pointedly observed in *Cappiello v. Hoke*, [698 F.Supp. 1042, 1050
> (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988), however, that] "an
> unconscionable breakdown in the state's process must be one that
> calls into serious question whether a conviction is obtained pursuant
> to those fundamental notions of due process that are at the heart of a
> civilized society."  [*Id.*,] 698 F.Supp. at 1050.

*Brazeau*, 2007 WL 2903617, at *10.

In light of Jones' claim that the County Court's decision relating to the identification
evidence establishes that an unconscionable breakdown occurred at the suppression hearing, this
Court briefly reviews the factors that courts are to consider in determining whether a witness'
in-court identification of the defendant is appropriate notwithstanding unduly suggestive
identification procedures.

In *Neil v. Biggers*, 409 U.S. 188 (1972), the Supreme Court found that unnecessary
suggestiveness alone does not require the exclusion of identification evidence.  Specifically, that
Court noted that courts are to consider the "totality of the circumstances" surrounding the
identification in ascertaining whether the identification of the defendant was reliable
notwithstanding the fact that the confrontation procedure was unduly suggestive.  In arriving at
that determination, the *Biggers* Court opined that courts must consider the following factors:  (1)
the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree
of attention at that time; (3) the accuracy of the witness' prior description of the suspect; (4) the
level of certainty demonstrated by the witness at the confrontation; and (5) the length of time

-12-

between the crime and the confrontation.  *Biggers*, 409 U.S. at 199-200.[12]

The transcript of the suppression hearing reflects that on the night of the alleged robbery, Murtha was at times only three inches from the face of Jones during that encounter, and that Murtha could "fully make out" Jones' face.  Suppression Tr. at pp. 85-86.  Murtha was clearly paying close attention to Jones at the time; Murtha testified at the suppression hearing that he was choking Jones and attempting to wrest a gun from him.  Suppression Tr. at p. 85.   Additionally, Murtha provided the police with an accurate description of:  i) Jones' physical appearance (Suppression Tr. at pp. 34-35); ii) the clothing Jones was wearing at the time of the robbery and personal items that he had at that time (*id.*); iii) Jones' then-current employer (*id.* at p. 46); and iv) the first name of Jones (*id.* at pp. 46-47);[13] *see also* App. at pp. A55-56 (supporting deposition executed by Murtha on December 9, 1999).  Murtha promptly identified Jones from the photo array and at trial, *see* Suppression Tr. at p. 42; Trial Tr. at p. 176, and less than one year had transpired between the time Jones entered Murtha's dorm room and the date on which he identified Jones as one of the perpetrators at trial.

Based upon the above, this Court concludes that Judge Breslin properly found that there existed "an independent basis" for Murtha's identification of Jones as the perpetrator of the crime. Suppression Tr. at p. 109.[14]  Therefore, petitioner's claim that such finding necessarily establishes

---

[12]     No single one of these factors is necessarily dispositive of this issue.  *See*, *e.g.*, *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992).

[13]     This description of Jones was provided to Investigator Knoebel by Murtha after he had viewed the first photo array but before he had viewed the second array.  Suppression Tr. at pp. 46-47.

[14]     Judge Breslin concluded that Murtha's interactions with Jones before the arrest warrant was issued established that Murtha's in-court identification of petitioner was

(continued...)

-13-

that an unconscionable breakdown occurred at the suppression hearing is without substance.

Moreover, this Court's review of the transcript of the suppression hearing and related state court

records fails to confirm Jones' allegation that such a breakdown occurred. Specifically, the record

reflects that Jones' defense counsel thoroughly questioned Investigator Knoebel, who arrested

Jones, as well as Murtha, at the suppression hearing. Trial counsel also cogently argued – albeit

unsuccessfully – that Murtha's identification of Jones as the perpetrator in the second photo array

was flawed, that his arrest was unlawful, and that therefore all evidence thereafter obtained by the

police after Jones' arrest was inadmissible. Suppression Tr. at pp. 103-04. Furthermore, the

Appellate Division explicitly considered (but rejected) appellate counsel's arguments that the

photo array was unduly suggestive, *see* Appellate Brief on Appeal ("App. Br."), Points I, II;

*Jones*, 301 A.D.2d at 679-80. Nothing in the record before this Court suggests that "fundamental

notions of due process" were violated by the state courts in considering and denying Jones' Fourth

Amendment challenges. This Court therefore denies Jones' initial ground for relief in light of

*Stone* and *Capellan*.

### ii.    Ineffective Assistance of Trial Counsel

In his next ground, petitioner argues that his conviction must be set aside because it was

obtained as a result of the ineffective assistance of trial counsel. *See* Am. Pet. at attached pp. 10-

11.

### 1.    Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal

---

[14](...continued)
permissible, notwithstanding the flawed photo array.   Suppression Tr. at p. 109.

prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his

defence." U.S. Const., amend. VI. To establish a violation of this right to the effective assistance

of counsel, a habeas petitioner must show both: a) that counsel's representation fell below an

objective standard of reasonableness, measured in light of the prevailing professional norms; and

b) resulting prejudice, i.e., a reasonable probability that, but for counsel's unprofessional

performance, the outcome of the proceeding would have been different. *Strickland v. Washington*,

466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles

that govern claims of ineffective assistance of counsel" were established in *Strickland*).

### 2.   Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

In support of his claim that he received the ineffective assistance of trial counsel, Jones

reiterates the fact that Judge Breslin found the procedure used by Investigator Knoebel with

respect to the photo array to be improper, and argues that his counsel never: i) objected to the fact

that the County Court never explicitly found that probable cause existed for the arrest warrant to

be issued; and ii) lodged an objection to the County Court's purportedly erroneous conclusion that

Able's identification of Jones justified the issuance of the arrest warrant.[15] *See* Am. Pet. at

attached p. 11; *see also* Supporting Mem. at pp. 21-24; Reply at pp. 3-4.

Jones raised this argument in his supplemental *pro se* appellate brief dated July 22, 2002

("*Pro Se* Appellate Brief"). *See id.* at pp. 5, 9-15.[16] In denying Jones' direct appeal, the Third

---

[15]     Abel did not identify Jones in the photo array until after the arrest warrant was issued. Suppression Tr. at p. 45.

[16]     In that brief, Jones argued that his trial counsel failed to challenge the propriety of Jones' arrest, *see Pro Se* Appellate Brief at p. 9, and claimed that such counsel employed "weak
(continued...)

Department determined that the claims raised in Jones' *Pro Se* Appellate Brief were "without merit." *See Jones*, 301 A.D.2d at 680.  This Court must therefore ascertain whether that determination is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny.

At the suppression hearing, Jones' counsel argued that the "heart and soul of the People's application for the [arrest] warrant" was the fact that Murtha had identified Jones in the second photo array shown to him by Investigator Knoebel.  *See* Suppression Tr. at p. 103.  Counsel reasoned that such identification was tainted because the photo array Murtha was shown was unduly suggestive.  *Id.*  Counsel further claimed that the issuance of the arrest warrant was therefore fatally flawed, and that all physical evidence obtained by the police at the time of that arrest should have been suppressed.[17]  *Id.*

The County Court noted that Jones' *Mapp*[18] claim "falls and rises on the *Dunaway* issue."[19]  Suppression Tr. at p. 104.  Although Judge Breslin found that the manner in which the

---

[16](...continued)
and lame tactics" at "critical stages" of the criminal proceeding below.  *Id.* at p. 12.  Jones specifically argued in that brief that his attorney improperly conceded the validity of the arrest warrant.  *Id.* at p. 14.

[17]     Specifically, defense counsel argued that absent Murtha's identification of Jones "there would be no [arrest] warrant.  Absent the warrant, there would be no lawful arrest. Absent the lawful arrest, there would be no reason or way to properly search."  Suppression Tr. at p. 103.

[18]     *Mapp v. Ohio*, 367 U.S. 643 (1961).  A *Mapp* hearing is held "to determine whether physical evidence sought to be used against a criminal defendant was obtained illegally by law enforcement officers and, thus, is inadmissible at the criminal defendant's trial." *Edwards v. Mazzuca*, No. 00 CIV 2290, 2007 WL 2994449, at *9 n.4 (S.D.N.Y. Oct. 15, 2007) (citing *Mapp*).

[19]     *Dunaway v. New York*, 442 U.S. 200 (1979).  "The purpose of a *Dunaway* hearing [is] to establish whether there was probable cause for the arrest."  *Pinero v. Greiner*,  No. 01 CIV. 9991, 2007 WL 2712496, at *22 (S.D.N.Y. Sept. 17, 2007).

photographic array was presented to Murtha by law enforcement agents was "improper," *see*

Suppression Tr. at p. 108, that court then made the following observations in support of its

conclusion that the identification of Jones made by Murtha was nevertheless proper:

> The Court:          Murtha testified that he had been subjected to
> a gunpoint robbery in his apartment a couple days
> earlier and indicated that he was in the presence of
> the defendant for an extended length of time in his
> apartment; part of the time with [Jones' face]
> partially ... exposed, part of the time with his face
> totally exposed, with at least three sources of light
> present within the room; during which period of time
> there were no apparent obstructions between the
> victim and the defendant herein, in terms of the
> victim making an observation.  That the very next
> day in broad daylight in a cafeteria [Murtha] had a
> face-to-face conversation with this defendant, who, in
> words or substance, said, "I'm the guy that robbed
> you last night."  And [Murtha] indicated that it was
> clear it was the guy that he had seen the night before.
> And, again, the conversation – and we have no
> indication how long they were there, we only have an
> indication of the substance of the conversation – that
> it was at least a minute or two he was in his presence,
> again, face-to-face in a well lighted cafeteria.
>
> * * * * *
>
>          [T]he Court finds, based upon the interaction
> of the victim with the defendant herein and the two
> interactions, one for an extended period of time in his
> apartment and one in broad daylight the next day in
> the cafeteria for a fairly substantial period of time,
> that there's an independent basis upon which he made
> the in-court identification as given here today in
> court.
>
>          Based upon this, I find the People have borne
> their burden of going forward to show there was a
> proper basis for the identification.  The defendant
> having shown nothing to the contrary, the
> identification as given by Mr. Murtha is deemed
> proper....

-17-

*See* Suppression Tr. at pp. 107-109.

Although Jones correctly argues that Judge Breslin never explicitly stated that the arrest warrant was lawfully issued, *see* Am. Pet. at attached p. 11, this claim appears to overlook the fact that the above-quoted excerpt from the suppression hearing establishes that County Court implicitly determined that the warrant was validly issued, notwithstanding the tainted photo array shown to Murtha.

Moreover, Judge Breslin's implicit finding that Murtha's detailed description of Jones to law enforcement agents prior to his viewing the tainted photo array provided the police with the probable cause necessary to obtain the arrest warrant is consistent with relevant case law that has addressed the issue of probable cause in the context of the propriety of an arrest. *See Rizzo v. Edison, Inc.*, 419 F.Supp.2d 338, 346 (W.D.N.Y. 2005) ("[i]t is well established that probable cause to arrest a suspect exists when a crime victim identifies the suspect"); *Breitbard v. Mitchell*, 390 F.Supp.2d 237, 245 (E.D.N.Y. 2005) (victim's identification of suspect in a police complaint "provides probable cause for an arrest, so long as the arresting officer's belief in the complaint's allegations was reasonable") (citations omitted); *People v. Martinez* 298 A.D.2d 897, 897 (4th Dept. 2002) (arrest warrant application valid where it was supported by statement of the victim identifying defendant as the person who abducted her); *People v. Harmon*, 293 A.D.2d 303, 303-04 (1st Dept.) (victim's description of perpetrator's physical appearance and personal effects of suspect "was sufficiently specific to provide the police with probable cause to arrest defendant"), *leave denied*, *People v. Harmon*, 98 N.Y.2d 676 (2002); *Dukes v. City of New York*, 879 F.Supp. 335, 341 (S.D.N.Y. 1995) ("[i]n-person identifications by a witness are sufficient to make out probable cause for arrest); *see*, *e.g.*, *Gisondi v. Town of Harrison*, 72 N.Y.2d 280, 283-84 (1988)

-18-

(affirming dismissal of false arrest claim; probable cause existed to issue arrest warrant based upon the victim's identification of suspect).

In light of the foregoing, it was not objectively unreasonable for defense counsel to refrain from arguing that the trial court erred when it did not explicitly find that the arrest warrant was lawfully issued.  Furthermore, since Murtha's identification of Jones afforded the authorities sufficient probable cause to issue the arrest warrant, petitioner's argument that defense counsel rendered ineffective assistance by conceding that if the County Court found Murtha's identification of Jones to be valid, the issuance of the arrest warrant was also valid, *see* Supporting Mem. at p. 24,  *see also* Suppression Tr. at p. 104, is without substance.

Petitioner further contends that defense counsel rendered ineffective assistance by failing to object to Judge Breslin's purported finding that the arrest warrant was properly issued on the basis of Able's identification of Jones.  *See* Supporting Mem. at pp. 23-24.

As noted *ante* in n.15, Able did not identify Jones until after the arrest warrant was issued. *See* Suppression Tr. at p. 45.  Thus, petitioner correctly argues that Able's identification of Jones could not supply the requisite probable cause for the issuance of that warrant.  However, Jones' claim that Judge Breslin based his finding that the arrest of Jones was lawful "entirely on Able['s identification] and not the actual complainant Murtha," *see* Reply at p. 4; *see also* Supporting Mem. at p. 23, overlooks the significant findings discussed above wherein Judge Breslin concluded that ***Murtha's*** identification of Jones was valid notwithstanding the fact that the photo array displayed to that witness was found by the County Court to be improper.  *See* Suppression

Tr. at pp. 108-09.[20]   Since Judge Breslin did not find that Able's identification of Jones was the only basis upon which the arrest warrant was lawfully issued, defense counsel did not render ineffective assistance by refraining from arguing that the County Court erred by concluding that Able's identification of Jones provided the probable cause necessary for the issuance of that warrant.

In sum, Jones has failed to demonstrate that his trial attorney rendered ineffective assistance during the course of the suppression hearing, including his failure to object to the County Court's failure to explicitly hold that the arrest warrant was properly issued.  Therefore, petitioner has not demonstrated that the Appellate Division's decision denying this aspect of his appeal, *see Jones*, 301 A.D.2d at 680, is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny.  The Court therefore denies this ground for relief.

### iii.   Ineffective Assistance of Appellate Counsel

In his next ground, Jones argues that he received the ineffective assistance of appellate counsel.  *See* Am. Pet. at p. 5.

### 1.   Clearly Established Supreme Court Precedent

The Sixth Amendment's provision that criminal defendants are entitled to the assistance of counsel has been interpreted by the Supreme Court to require that indigents be provided with assigned counsel for their first appeal as of right.  *Douglas v. California*, 372 U.S. 353, 358 (1963).  Thus, an individual is entitled to the effective assistance of appellate counsel.  *McMann v.*

_____

[20]   Murtha provided the supporting deposition to law enforcement agents on December 9, 1999.  *See* App. at pp. A55-56.  That deposition described the physical characteristics of the perpetrator, the personal items he brought with him when he entered Murtha's dorm room, as well as the name of his employer.  *See id.*  Murtha was not shown any photo array until the following day.  *See* Suppression Tr. at pp. 37-39.

*Richardson*, 397 U.S. 759, 771 n.14 (1970).  The proper standard for evaluating a claim that

appellate counsel was ineffective is the test enunciated in *Strickland*.  *See Smith v. Robbins*, 528

U.S. 259, 287-89 (2000).  In reviewing such a challenge, this Court is mindful that there is a

"strong presumption of attorney competence," and the court's standard of review of an appellate

counsel's performance is "highly deferential."  *Kimmelman v. Morrison*, 477 U.S. 365, 381-83

(1986).  Furthermore, it is clear that an appellate counsel "need not (and should not) raise every

nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of

success on appeal."  *Robbins*, 528 U.S. at 287-88.

### 2. Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

In support of his claim that his appellate counsel rendered ineffective assistance, Jones

refers the Court to the 'supporting facts" Jones asserted in support of his ground for relief alleging

ineffective assistance of trial counsel, *see* Am. Pet. at p. 5, and principally argues that his appellate

counsel rendered ineffective assistance because he failed to claim on appeal that trial counsel

rendered ineffective assistance.  *See* Supporting Mem. at pp. 25-27; *see also* Reply at pp. 7-8.

However, because this Court has concluded that trial counsel did not render ineffective

assistance, appellate counsel cannot be found to have provided constitutionally deficient

representation by failing to assert an ineffective assistance claim relating to defense counsel.  *See*

*DeVivo v. Superintendent, Auburn Correctional Facility*, No. 02-CV-0840, 2006 WL 581145, at

*18 (N.D.N.Y. Mar. 8, 2006) (citations omitted) (Kahn, J., adopting Report-Recommendation of

Magistrate Judge David E. Peebles), *appeal dismissed*, *DeVivo v. Goord*, No. 06-2279-pr (2d Cir.

June 13, 2007).  In other words, appellate counsel cannot be found to have rendered ineffective

assistance by failing to assert a meritless claim on appeal.  *See Lopez v. Fischer*, No. 05 CIV.2558,

2006 WL 2996548, at *12 (S.D.N.Y. Oct. 16, 2006) ("petitioner cannot show that appellate

counsel's failure to raise [meritless] claims on direct appeal renders his representation below an

objective standard of reasonableness, nor can petitioner show that had these claims been presented

on appeal, his outcome would have been any different"); *Melenciano v. Walsh*, No. 02 CIV.9593,

2005 WL 768591, at *8 (S.D.N.Y. Apr. 6, 2005) ("[w]here the underlying claim is without merit,

the claim of ineffective assistance of counsel for not raising the issue during the trial is, likewise,

meritless") (citations omitted); *see also Mackenzie v. Portuondo*, 208 F.Supp.2d 302, 319

(E.D.N.Y. 2002) ("'[t]he failure to include a meritless argument does not fall outside the wide

range of professionally competent assistance to which Petitioner was entitled'") (quoting *Aparicio*

*v. Artuz*, 269 F.3d 78, 99-100 & n.10 (2d Cir. 2001)) (other internal quotation and citation

omitted).

Jones also contends, however, that appellate counsel rendered ineffective assistance

because the brief he filed was "wholly inadequate," and such counsel was "a family [c]ourt

attorney" who failed to "exercise the skill, judgment, comprehension [and] diligence required of a

reasonably competent attorney to perfect a complex criminal appeal."  Supporting Mem. at p. 26.

The Court initially notes that appellate counsel argued in his brief – as Jones asserts herein

– that:  i) the People failed to establish that Murtha's identification of Jones was proper in light of

the improperly suggestive photo array (*see* App. Br., Point I; Supporting Mem. at pp. 19-25);[21] and

ii) because no probable cause justified the issuance of the arrest warrant, Jones' arrest – and the

physical evidence obtained pursuant to that arrest – was improperly admitted into evidence against

---

[21]     Jones' claims challenging the propriety of the identification evidence are raised in
the context of his claim that trial counsel rendered ineffective assistance in failing to assert such
arguments.  *See* Supporting Mem. at pp. 19-25.

Jones (*see* App. Br., Point II; Supporting Mem. at pp. 18-19).  The fact that Jones has raised two of the same theories in his amended pleading that appellate counsel asserted in his brief calls into question petitioner's argument that such brief was "wholly inadequate."  Supporting Mem. at p. 26.

Regardless, in conjunction with this claim, this Court has reviewed counsel's appellate brief.[22]  That review has satisfied this Court that appellate counsel's strategy was reasonable and sound, and that the claims asserted therein were cogently argued.

Since nothing before the Court suggests that the appellate brief filed by counsel was deficient, petitioner's ineffectiveness claim challenging the quality of counsel's appellate arguments must fail.  *E.g.*, *Gonzalez v. Duncan*, No. 00-CV-2857, 2001 WL 726985, at *6 (E.D.N.Y. June 22, 2001) (denying habeas claim alleging ineffective assistance of appellate counsel where appellate brief reveals sound appellate strategy on part of attorney); *Davis v. Keane*, No. 99 CV 71, 2001 WL 13288, at *6 (E.D.N.Y. Jan. 4, 2001) (same), *aff'd*, No. 01-2110, 2002 WL 2009559 (2d Cir. Sept. 3, 2002).[23]

---

[22]    In that brief, counsel argued that:  i) the trial court improperly failed to suppress Murtha's identification of Jones; ii) Judge Breslin erred in failing to suppress the physical evidence that was obtained as a result of an illegal arrest; and iii) the County Court wrongfully failed to sever the charges in the Indictment.  *See* App. Br. at pp. 8-19.  That brief was accompanied by an appendix in support thereof consisting of over seventy pages.

[23]    The Court notes that the claims petitioner argues appellate counsel wrongfully failed to raise on appeal were nevertheless considered (and rejected) by the Third Department in its decision denying his *coram nobis* application.  Thus, it is not clear that Jones could demonstrate that he was prejudiced by appellate counsel's failure to assert these claims on appeal.  *See Duncan v. Fischer*, 410 F.Supp.2d 101, 120-21 (E.D.N.Y. 2006); *Culbreath v. Bennett*, No. 01-CV-6337, 2004 WL 1811394, at *18 (W.D.N.Y. Aug. 11, 2004); *Bingham v. Duncan*, 01 Civ. 1371, 2003 WL 21360084 at *5 (S.D.N.Y. June 12, 2003) ("[a]s to appellate counsel's failure to raise certain claims on direct appeal, petitioner cannot demonstrate the

(continued...)

In sum, petitioner has not demonstrated that the Appellate Division's decision denying his *coram nobis* application alleging ineffective assistance of appellate counsel claim is improper in any way. He has therefore failed to establish that such decision of the Third Department is either contrary to, or represents an unreasonable application of, the above-reference Supreme Court precedent. This Court therefore denies this ground for relief.

### iv.   <u>Illegal Sentence</u>

In his fourth and final claim, Jones argues that the consecutive sentences imposed on him by the trial court are "unlawful as a matter of law." *See* Am. Pet., Ground Four.

Appellate counsel did not assert a challenge to the legality of the sentences imposed on Jones in his appellate brief, *see* App. Br., and Jones did not raise this claim in his supplemental *pro se* appellate brief. *See Pro Se* Appellate Brief. Furthermore, petitioner did not raise this claim in his May, 2001 CPL Motion or the *coram nobis* application referenced above.

It is well settled that a federal district court "'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....'" *Shabazz v. Artuz*, 336 F.3d 154,160 (2d Cir. 2003)) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (other citation omitted); *see also Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir.) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844

---

[23](...continued)
requisite prejudice. Petitioner's *pro se* supplemental brief presented all of the issues he wished to raise").

(1999)), *cert denied sub nom.*, *Galdamez v. Fischer*, 544 U.S. 1025 (2005).[24]

Since petitioner does not appear to have ever presented his sentencing claim in the state courts,[25] this claim is unexhausted.  Respondent, however, has not argued that this ground must be dismissed due to petitioner's failure to exhaust his state court remedies.  *See* Answer; Resp. Mem.

In *Acosta v. Artuz*, 221 F.3d 117 (2d Cir. 2000), the Second Circuit noted that it is improper for a federal district court to *sua sponte* dismiss a federal habeas claim on the theory that such claim is unexhausted.  *Id.* at 121-24.  Thus, Jones' final ground cannot be *sua sponte* dismissed because he failed to exhaust this claim.  However, because 28 U.S.C. § 2254(b)(2) authorizes federal district courts to address the merits of unexhausted habeas claims, *id.*, this Court may nevertheless consider this ground.

The Second Circuit has not yet discussed the appropriate standard of review that district courts are to utilize when reviewing an unexhausted claim.  *See Carr v. Senkowski*, No. 01-CV-689, 2007 WL 3124624, at *15 n.12 (W.D.N.Y. Oct. 23, 2007); *Brown v. State of New York*, 374 F.Supp.2d 314, 318 (W.D.N.Y. 2005).  As the *Carr* court recently noted, most courts within this circuit that have addressed this issue have utilized a "patently frivolous" standard.  *See Carr*, 2007 WL 3124624, at *15 n.12 (citations omitted); *see also Brown*, 374 F.Supp.2d at 318

---

[24]  This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  *O'Sullivan* 526 U.S. at 845; *see also Galdamez*, 394 F.3d at 72 (citing *O'Sullivan*).

[25]  Habeas corpus petitioners bear the burden of demonstrating that they have exhausted available state remedies.  *Cruz v. Artuz*, 97-CV-2508, 2002 WL 1359386 (E.D.N.Y. June 24, 2002) (citing *Colon v. McCall*, 19 F.Supp.2d 112, 119-20 (S.D.N.Y. 1998) (other citation omitted)); *see also Ruine v. Walsh*, 00 CIV. 3798, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citing *Colon*).

(citing *Naranjo v. Filion*, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003))

(collecting cases) (footnote omitted).  A minority of district courts, however, have opined that the

dismissal of an unexhausted claim is appropriate when "it is perfectly clear" that the petitioner

"does not raise even a colorable federal claim.'"  *Carr*, 2007 WL 3124624, at *15 n.12 (internal

quotation and citation omitted); *see also Hernandez v. Lord*, No. 00-CIV-2306, 2000 WL

1010975, at *4 n.8 (S.D.N.Y. July 21, 2000) (collecting cases); *Russell v. Ricks*, No. 02-CV-0940,

2006 WL 1555468, at *16 (N.D.N.Y. May 31, 2006) (Kahn, J.).

However, because this Court concludes that Jones' sentencing claim must be dismissed

under either standard, it need not determine which of the above-referenced tests should be applied

in considering this unexhausted claim.

The Second Circuit has clearly held that: "[n]o federal constitutional issue is presented

where ... the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381,

1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F.Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*,

875 F.2d 857 (2d Cir. 1989)); *see also Brown v. Donnelly*, 371 F.Supp.2d 332, 343-44 (W.D.N.Y.

2005); *Jackson*, 74 F.Supp.2d at 181 ("[i]t is well-settled ... that a prisoner may not challenge the

length of a sentence that does not exceed the maximum set by state law").

In the present case, petitioner does not claim that the trial court imposed sentences that

exceeded the maximum term permitted by New York law, but instead argues that the County

Court improperly imposed consecutive sentences on Jones.  *See* Am. Pet. at p. 6; Supporting

Mem. at pp. 28-30.[26]  Thus, this Court briefly reviews case law which addresses the issue of when

---

[26]        As noted above, in the subject criminal case Judge Lamont ordered that the
fourteen year determinate sentence imposed on Jones relating to the second degree criminal

(continued...)

consecutive sentences may be legally imposed on criminal defendants.

In New York, the discretionary power of trial courts in New York "includes the ability to impose consecutive penalties for multiple crimes." *People v. Ramirez*, 89 N.Y.2d 444, 450 (1996) (citing *Matter of Walker v. Walker*, 86 N.Y.2d 624, 629 (1995)) (other citation omitted). Consecutive sentences may be imposed on a defendant "when the offenses are committed through separate and distinct acts, though they are part of a single transaction," even where the statutory elements of the offenses overlap. *See Ramirez*, 89 N.Y.2d at 451. Concurrent sentences are only **required** in New York where two or more offenses are committed: "(1) 'through a single act or omission,' or (2) 'through an act or omission which in itself constituted one of the offenses and also was a material element of the other.'" *Bethune v. Superintendent*, *Bare Hill Correctional Facility*, 299 F.Supp.2d 162, 166 (W.D.N.Y. 2004) (emphasis added) (citing New York Penal Law § 70.25(2)); *see also People v. Laureano*, 87 N.Y.2d 640, 643 (1996).

In determining whether concurrent sentences are required, courts must initially examine the elements of the crimes for which the defendant was convicted and sentenced. *See People v. Mack*, 242 A.D.2d 543, 543-44 (2d Dept. 1997) (citing *Laureano*, 87 N.Y.2d 640) (other citations omitted). In conducting such examination, courts must determine whether the acts required to commit the crimes are identical for both offenses, or if the act required for one offense is a material element of the second offense. *Laureano*, 87 N.Y.2d at 643. If neither of these elements is present, the imposition of concurrent sentences is not legally required. *Id.*

---

[26](...continued)
possession of a weapon conviction run consecutive to the sentences imposed on Jones for his convictions on the charges of criminal possession of a controlled substance. *See* Sentencing Tr. at pp. 13-15.

To properly convict Jones of the third count in the Indictment, the prosecution was required to prove that on December 12, 1999, Jones possessed a loaded firearm with the intent to use that weapon unlawfully against another person. *See* New York Penal L. § 265.03. With respect to the drug related offenses of which Jones was found guilty, this Court notes that a person is guilty of criminal possession of a controlled substance in the third degree in New York when he knowingly and unlawfully possesses a narcotic drug with intent to sell it. *See* N.Y. Penal L. § 220.16(1). A person is guilty of fourth degree criminal possession of a controlled substance when "he knowingly and unlawfully possesses ... one or more ... substances containing a narcotic drug and said ... substances are of an aggregate weight of one-eighth ounce or more." N.Y. Penal L. § 220.09(1).

The foregoing establishes that the elements of the weapons possession charge are not identical to the acts the prosecution was required to prove relating to the drug charges in the Indictment. Nor are any acts relating to the third count material elements of either the fourth or fifth counts in the Indictment. Thus, the imposition of consecutive sentences on Jones by Judge Lamont was clearly authorized under New York law.

Arguably, this ground could be construed as a claim that the sentence imposed on petitioner amounts to a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272; *see Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (the Eighth Amendment only forbids sentences which are "grossly disproportionate" to the crime);

-28-

*see also Hutto v. Davis*, 454 U.S. 370, 374 (1982).  A sentence of imprisonment which is within

the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional

sense.  *Brumfield v. Stinson*, 297 F.Supp.2d 607, 622 (W.D.N.Y. 2003) (citing *Thompson v. Lord*,

No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.) [, *adopted*,

*Thompson v. Lord*, No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.)]

(other citations omitted).  This Court's review of the state court record establishes that the

imposed sentences in that proceeding are not grossly disproportionate to the severity of his crimes.

In sum, this Court finds petitioner's unexhausted sentencing claim to be patently frivolous.

The Court alternatively concludes that it is perfectly clear that Jones has not raised even a

colorable habeas claim relating to his sentences in this action.  Therefore, the final ground in his

amended petition must be denied.

### III.    Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability,
> an appeal may not be taken to the court of appeals from –
>
>> (A) the final order in a habeas corpus proceeding in
>> which the detention complained of arises out of
>> process issued by a State court ....[27]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has

made a substantial showing of the denial of a constitutional right."  <u>See</u> 28 U.S.C. § 2253(c)(2).

Since petitioner has failed to make such a showing herein, the Court declines to issue any

---

[27]        Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal
may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of
appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).

Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that Jones' amended habeas petition (Dkt. No. 34), as supplemented by him in his Supporting Memorandum of Law (Dkt. No. 41) is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by regular or electronic mail, and it is further

**ORDERED**, that any state court records that were not filed and docketed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

**IT IS SO ORDERED.**

Dated: November 28, 2007
           Syracuse, New York



_____
Norman A. Mordue
Chief United States District Court Judge

-30-